February 20th, 1905.

———o———

## No. 3611.

### (Court of Appeal, Parish of Orleans.)

### JAMES H. ROOD vs. FREDERICK C. E. DUNCAN.

Appeal from Civil District Court, Division "A."

Wynne G. Rogers, Boatner and Manion, for Plaintiff and Appellant.

C. F. Claiborne and W. S. Benedict, for Defendant and Appellee.

1. When an owner has alienated one of two estates which belonged to him and the ownership of any part of it is contested, the limits assigned to it by the vendor at the time of the sale must be consulted.

2. The limits anciently subsisting between the two estates must not be regarded, because the designation which the vendor makes of the

metes and bounds forms new limits between the two estates or between the parts which he has sold.

3. No special significance attaches to the specifications of an advertisement of a private sale; it is to the terms of sale announced at the offering that bidders must look and by which the parties may be bound; hence parol evidence of the announcement made by the auctioneer at such offering may, in a proper case, be admissible.

MOORE, J. Plaintiff and defendant are adjoining proprietors owning two certain properties, situated in the City of New Orlens, between which, beginning at a given point on the front line of the properties and running back to a distance of about 15 feet, the defendant had erected a small iron fence; to compel the removal of which, on the ground that it encroached on his property three feet, the plaintiff brought his suit.

Plaintiff's contention, to quote from the brief of his counsel, is: that both these properties belonged to a common author; that he had erected buildings and fences, and established boundaries thereon, and that the words "more or less" contained in the respective titles of plaintiff and defendants were intended to cover, and did cover, any inaccuracies that might arise in the stated measurements, and were inserted in said acts in conformity to the destination du pere de famille made by their common author, Lynd; and that, as a matter of fact, there was really more ground enclosed in the actual, physical and visible boundaries of his said property as established by said Lynd, common author, than as contained in the specific measurements stated in said act of sale to him, and that by the operation of the doctrine of destination du pere du famille, as well as the express precautionary clause of "more or less' inserted in said act of sale, he was entitled to all the ground contained within said physical, tangible and visible boundaries, and that any encroachment thereon was an infringement of his rights; and that the defendant, Duncan, in erecting the iron fence described in the petition, failed to confine himself

154

to the boundaries as established and fixed by their said common author, and had actually constructed same on the property of plaintiff.

*Per contra*, the defendant urges that the fence is built immediately on the dividing line of the respective properties as established by the titles thereto, and in strict conformity to a plan and sketch, clearly and definitely fixing and marking the boundaries of the properties, annexed to and made part of the act of sale to plaintiff's immediate author; that there does not exist, and never have existed, any destination du pere du famille, affecting said property, than that established by the respective sales to defendant and to the author of plaintiff, and that by said sales the specific frontage of plaintiff's property was designated, fixed and established at the point where the fence is built.

There was judgment for the defendant and plaintiff appeals.

The evidence shows that the respective properties of the parties to the suit were carved out of what was originally four certain town lots, situated in what was once the City of Lafayette, in the Parish of Jefferson, but now a part of the City of New Orleans, and which lots were owned by different persons until 1849, when they passed to a common owner; and that they continued to remain in common ownership, through different parties, until 1894. At this time one of the then common owners of the entire property acquired from the others, a particular portion of the property, retaining, however, her joint ownership in the remainder. Thenceforward common ownership ceased.

The title to the property, traced back to the first period of common ownership, is as follows:

On the 9th of February, 1848, Louis Cavalier sold to widow Jean Baptiste Poree two lots of ground, situated in the City of Lafayette, in the square bounded by St. Marie (now St. Mary), Jersey or St. Elizabeth, (now Annunciation), Felicity and Laurel, according to a plan of Henry Grant, City Surveyor, etc., each lot measuring 27 feet 9 inches front on Jersey Street (Annuncia-

tion St.) by 128 feet 1 inch and 1 line in depth.

On the 3rd of April, 1849, Mrs. Widow Jean Baptiste Poree acquired by purchase from James P. Ferret, two certain lots of ground adjoining the above property acquired by her from Cavalier, and described on a plan of Henry Moellhauser, as Nos. 6 and 7, each lot measuring 25 feet 3 inches front on Elizabeth Street (Annunciation St.), by a following depth: Lot No. 6, 128 feet 3 inches and 3 lines on the side next to Felicity Street, by 24 feet in width in the rear; Lot No. 7, 128 feet 3 inches and 1 line on side next to St. Mary Street, and 128 feet 3 inches and 1 line on the division line of lot No. 6, and 24 feet in width in the rear.

Mrs. Poree thus became the owner of the four above described lots and so remained until her death, when, on the 2nd of November, 1861, they were acquired at her succession sale by one John Hall.

Hall then sold them to William Lynd on the 20th of June, 1866, when, on the 6th of December, 1872, William Lynd having in the meanwhile died, his surviving widow and heirs were sent into possession of the property as owners. On the 24th of August, 1894, the widow of William Lynd, by act of donation intervivos, and in which all the heirs joined to ratify and confirm the same, widow Lynd conveyed to her daughter Elizabeth Lot No. 6 and a portion of Lot No. 7, both comprehended in the Moellhauser plan and secondly above described as the two lots acquired on the 3rd of April, 1849, by Mrs. Poree from J. P. Ferret. The portion thus conveyed being declared in the act of donation as measuring "39 feet 6 inches front on Annunciation Street, by 128 feet, 3 inches and 3 lines in depth on the side nearest Felicity street; 128 feet, 3 inches and 2 lines in depth on the other side line, and about 38 feet 6 inches in width on the rear line." By this act of donation the entire four lots, which, together gave a frontage of 106 feet, were thus subdivided into 2 lots or tracts, one having a frontage of 39.6 feet carved out of the two lots acquired under the Moellhauser plan aforesaid, and which two lots

originally had a frontage of 50.6 feet; and a second lot, or tract, comprising the two lots under the Grant Plan and first above described as having been acquired by Mrs. Poree on the 9th of February, 1848, from Louis Cavalier; thus giving that tract a frontage of 66 feet 5 inches, which included the 55 feet 6 inches of the two lots under the Grant plan and the remaining 11 feet left over from the two Moellhauser tracts.

As thus subdivided by the common owners and as thus respectively held, that is to say, to the extent of 39 feet 6 inches front by Elizabeth Lynd individually, and 66 feet 6 inches by her brothers and sisters and her mother jointly, the property remained until the 18th of June, 1902, when all the Lynds made another designation of the frontage for the two lots, or tracts, into which the whole four lots were divided. They desired to give to the tract nearest St. Mary street, which up to this time, as just stated, a frontage of 66 feet 6 inches was given, an additional frontage of 3 feet, which was to be accomplished by subtracting from Elizabeth's tract, which had been donated to her by her mother, 3 feet, thus reducing it to 36 feet 6 inches. All parties consenting thereto, they advertised the two subdivisions thus made for sale at public auction, designating and describing one tract or lot as containing 36 feet front by 128 feet in depth and the other as containing 69 feet front by 128 feet depth; the auctioneer proclaiming the fact at the time that the increase by 3 feet of the frontage of the one lot, which we shall hereafter refer to as lot A, was to be made by taking same from lot B, (by which the other lot will be called), so that the purchaser of lot B would acquire but 36 feet, which was all that was designated as the front measurement of that lot. At the auction sale, E. A. Carrier bid in lot B and defendant lot A, and subsequently formal acts of sale were executed by the Lynds to the respective purchasers.

In the Carrier act the property sold is described as follows: "A certain lot of ground, together with the buildings and improve-

ments thereon and all the appurtenances thereto belonging, situated in the Fourth District of this City, designated by the letter B, in the square bounded by Annunciation (late Jersey) street, Mary, Laurel and Felicity streets, on the annexed sketch made a part hereof, according to which sketch said lot lies at a distance of 115 feet from the corner of Annunciation and Felicity streets, and measures from thence 36 feet 6 inches front on Annunciation street, 34 feet 6 inches in width in the rear, by a depth of 128 feet, 3 inches and 3 lines on the side line nearest Felicity street, and of 128 feet, 3 inches and 2 lines on the opposite side line adjoining lot A on said sketch, all measurements being more or less." Thence follows a recital of the several conveyances from 1849, as above stated by us.

In the defendant's act of sale, lot A is described as beginning "at a distance of 110 feet from the corner of St. Mary and Annunciation streets, and measures from thence 69 feet 6 inches front on Annunciation street; 66 feet, 5 inches and 6 lines in width in the rear by a depth of 128 feet, 6 inches and 1 line on the side line nearest St. Mary street and 128 feet, 3 inches and 2 lines on the opposite line adjoining lot B on said sketch, all measurements more or less"; the heirs of Lynd selling the 66 feet 6 inches front by the depth, and Elizabeth Lynd in her individual capacity and in the same act, conveying the extra strip of three feet she had carved out of the two lots belonging to her and which was especially excluded from the sale to Carrier of lot B as fully shown by the descriptions of both lots A and B in the acts of sale thereof, as well as by the sketch annexed to those acts. This latter sketch particularly indicates this strip. Its dimensions, as well as those of the other divisions of the property, are specifically given, and it is so colored and lined as to show, at a glance, that it is separate and distinct from B; that it was excluded from and not intended to be sold as part of that lot, but that on the contrary, it was to be and constituted a part of lot A.

On the 21st of June, 1904, Carrier sold lot B to the plaintiff, the description being exactly that given in the act of sale from the Lynds to him, reference being made to the latter act in the act of sale to plaintiff.

The facts above mentioned clearly demonstrates that the only *destination du pere du famille* affecting the property whatsoever, is that which designated and fixed the boundaries of the property when the subdivision of it was made by the Lynds, and as described in the two acts of sale to Carrier and the defendant respectively and as marked and indicated in the sketch annexed to and made part of the acts of sale.

It is immediately on the boundary line of this 3 foot strip and plaintiff's property, that the iron fence was put up; and it is conceded that at this point each party hereto gets exactly the frontage called for by their respective titles; that is to say, at a distance of 115 feet from the corner of Annunciation and Felicity streets the plaintiff gets 36 feet 6 inches front with the fence standing where the defendant had built it; and at a distance of 110 feet from the corner of St. Mary and Annunciation streets, the defendant gets his 69 feet 6 inches. Both parties get exactly what they bought, but the plaintiff lays claim to this three foot strip because of the ancient limits of the whole property. It is no concern of the parties what the ancient limits of the properties were. The designation which the vendor makes of the metes and bounds alone controls. Act 844 C. C. provides that when an owner has alienated one of two estates which belonged to him, and the ownership of any part of it is contested, the limits assigned to it by the vendor at the time of the sale must be consulted. The limits anciently subsisting between two estates, must not be regarded, because the designation which the vendor makes of the metes and bounds forms new limits between the two estates or between the parts of them which he has sold". See also 6 La., 543, 7 A. 573; 9 A. 275, 14 A. 489.

Nor is there any merit in the contention that the clauses "more

or less" following the dimensions stated in the act of sale must be construed as intending to include in the Carrier sale the aforesaid three foot strip or any part of it. The evidence, received without objection, conclusively establishes the fact that this clause was inserted in both the Carrier and the Duncan acts of sale, to cover what might possibly be an inaccurate of side lines and rear width in both lots, and that it was never intended to affect the fixed and designated frontage of either lot.

Our attention is directed to a bill of exception reserved by the appellant to the ruling of the trial judge permitting parol evidence to be received as to the announcement of the auctioneer that the strip of 3 feet was not to be included in the sale of lot B, and that but 36 feet 6 inches was to be the front measurement of that lot. The advertisement of the property was not a judicial sale but of a private sale and hence, as said in Eisenhauer vs. Brosman, 44 A. 744: "No special significance can attach to the specifications of an advertisement of such a sale, as it is to the terms of the sale announced on the offering that bidders must look to." Besides this the advertisement calls for but 36 feet front for lot B, whereas plaintiff's title, and as so announced by the auctioneer, gives him six inches more.

There is no error in this ruling; nor is there any in the conclusion reached by the trial judge to the effect that "the evidence is overwhelming against plaintiff's contention."

The judgment appealed from is therefore affirmed.

February 20th, 1905.

Rehearing refused March 6th, 1905.